A.E.S.
2/4/14



FEB 1 1 2014

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

CMX:  USAO 2012R00834

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| | * | Criminal No. JFM 14 CR 0075 |
| **UNITED STATES OF AMERICA** | * | |
| | * | **Conspiracy to Defraud the United** |
| v. | * | **States, 18 U.S.C. § 371** |
| | * | **Unlawful Export of Defense Articles,** |
| **KAMRAN ASHFAQ MALIK** | * | **22 U.S.C. § 2778** |
| and | * | **Unlawful Export of Goods,** |
| **WALEED AFTAB,** | * | **50 U.S.C. § 1705** |
| | * | **Aiding and Abetting, 18 U.S.C. § 2** |
| **Defendants** | * | |
| | * | |

*****

### INDICTMENT

The Grand Jury for the District of Maryland charges that:

### COUNT ONE

### Conspiracy to Defraud the United States

#### Export Laws and Regulations

1.      The Arms Export Control Act (AECA), specifically, Section 2778 of Title 22,

United States Code, authorizes the President of the United States to control the export of arms,

munitions, and other defense articles by designating said items and promulgating regulations

with respect to their export.  The items so designated are set forth on the United States Munitions

List (USML).  By virtue of the President's delegation of his authority under the AECA, the

Directorate of Defense Trade Controls (DDTC) within the Department of State is charged with

regulating the export of defense articles.

2.      The AECA and its implementing regulations, the International Traffic in Arms

Regulations (ITAR) (22 C.F.R. Parts 120-130), require a person to apply for and obtain an export

license from the DDTC before exporting defense articles from the United States.  In the export license application, known as a Form DSP-5, the exporter must identify the nature of the defense articles to be exported, the end-recipient, and the purpose for which they are intended.  The AECA and the ITAR remained in full force and effect throughout the time frame of this Indictment.

3.      Category I of the USML designates certain firearms and assault weapons, and related components and technical data, as defense articles subject to the ITAR.  During the time frame of the events set forth in this Indictment, the following firearm parts and accessories associated with AR-15 style semi-automatic rifles were designated defense articles under Category I of the USML and prohibited from export from the United States absent an export license from the DDTC:  a .223 caliber rifle lower receiver; a .223 caliber rifle bolt carrier; a .223 caliber 10 round magazine; and a .223 caliber 100 round magazine.

4.      The International Emergency Economic Powers Act (IEEPA) (50 U.S.C. §§1701-1706) gives the President the power to regulate exports and other international transactions in times of national emergency, as triggered by national security, foreign policy or economic concerns stemming from the unrestricted access by foreign parties to United States goods and technologies.  By virtue of the President's delegation of his authority under the IEEPA, and through a continuing series of Executive Orders, the Bureau of Industry and Security (BIS) within the Department of Commerce is charged with administering the regulations governing the export of goods and commodities.

5.      Items controlled for export by the Department of Commerce are categorized on the Commerce Control List contained in the Export Administration Regulations (EAR) (15 C.F.R. Parts 730-774), and are identified by an Export Control Classification Number (ECCN).

2

Depending upon an item's technical characteristics, destination, end-user, or end-use, certain of these commodities may not be exported unless authorized by the BIS through issuance of an export license. The IEEPA and the EAR remained in full force and effect throughout the time frame of this Indictment.

6. Certain optical sighting and laser pointing devices for firearms, as classified under ECCN 0A987, are controlled for export from the United States to Pakistan for reasons of crime control. During the time frame of the events set forth in this Indictment, the following firearm parts and accessories suitable for use on AR-15 style semi-automatic rifles were prohibited from export to Pakistan absent issuance of an export license from the BIS: an Aimpoint CompM3 optical gun sight, and a TLR-2 LED rail mounted flashlight with laser.

7. The ITAR and EAR also prohibit transactions that seek to evade or avoid said regulations by making false or misleading statements, or concealing a material fact, in documents relating to an export of defense articles or goods, such as air waybills, bills of lading, sales or shipping invoices/lists, and Shipper's Export Declarations (SED). The SED, which identifies the nature and value of the item being exported, its true and final destination, and the identity of the individual or entity seeking to export the item, is required if, among other things, the value of the item to be exported exceeds $2,500, and/or if the item is being exported pursuant to an export license. The filing of the SED would alert the Department of Commerce to the export and enable it and other agencies to track the export and ascertain compliance with licensing and other export requirements and restrictions.

### The Defendants

8. At all times material to this Indictment, defendant **KAMRAN ASHFAQ MALIK**, a naturalized citizen of the United States born in Pakistan, resided in Upper Marlboro,

Maryland, where he owned and operated a pizza shop.  **MALIK** also maintained a residence in Lahore, Pakistan.

9.      At all times material to this Indictment, defendant **WALEED AFTAB** resided with **MALIK** in the same location in Upper Marlboro, Maryland, and worked at **MALIK's** pizza shop.

10.     At no time relevant to this Indictment did either **MALIK** or **AFTAB** apply for, receive, or possess licenses from the Department of State or the Department of Commerce to export or transfer defense articles or goods of any description.

### The Charge

11.     Beginning in or about July 2012, and continuing to in or about March 2013, in the District of Maryland, the Commonwealth of Virginia, and elsewhere,

### KAMRAN ASHFAQ MALIK
### and
### WALEED AFTAB

did knowingly and intentionally combine, conspire, confederate and agree with each other, and with others known and unknown to the Grand Jury, to defraud the United States, specifically, the Department of State and the Department of Commerce, by interfering with, impeding and obstructing, through deceit, craft, trickery, and dishonest means, lawful government functions, that is, the enforcement of laws and regulations controlling the export and supply of defense articles and goods from the United States.

12.     The object of the conspiracy was to export defense articles and goods to Pakistan by evading export prohibitions and licensing requirements through concealment, deceit and other means.

13.     It was part of the conspiracy that the defendants and their associates utilized false

names and addresses on purchase and shipping documents in order to facilitate and conceal their unlawful exports of defense articles and goods to Pakistan.

14.     It was further part of the conspiracy that **MALIK** utilized the bank account and Virginia residence of an associate to conceal his Maryland residency and facilitate his purchases of firearms, parts and accessories.

15.     It was further part of the conspiracy that in order to conceal and facilitate their unlawful exports, the defendants and their associates falsely identified, or "manifested," on shipping receipts the contents of packages they sought to export, and falsely declared the contents to be of nominal value.

**Overt Acts**

16.     It was further part of the conspiracy that in order to effect its unlawful objectives, the defendants and other members of the conspiracy performed, participated in, and committed certain overt acts in the District of Maryland and elsewhere, including the following acts on or about the dates listed below.

17.     On July 29, 2012, **MALIK** purchased a Colt Sporter M-4 semi-automatic rifle (a type of AR-15 style semi-automatic rifle), serial number SP514438, from Vendor A, a federally licensed firearms dealer in Lorton, Virginia.

18.     On July 30, 2012, **MALIK** caused images of two male associates posing with two AR-15 style semi-automatic rifles to be captured on his cellular telephone at a location at or near the Maryland residence he shared with **AFTAB**.  One of the rifles was equipped with an optical gun sight and rail mounted flashlight with laser, while the other was equipped with a collapsible butt stock.

19.     On September 22, 2012, **MALIK** purchased, and caused the purchase of, four (4)

AR-15 100 round dual drum magazines from Vendor B, a firearm accessories supplier in Clearwater, Florida.  The items were purchased under the name of, and for shipment to, an associate, who resided in Springfield, Virginia (hereafter "the Virginia associate"), and paid for with funds debited from the associate's bank account.

20.     On September 22, 2012, **MALIK** purchased, and caused the purchase of, four (4) AR-15 100 round dual drum magazines from Vendor C, a federally licensed firearms dealer in Fort Worth, Texas.  The items were purchased under the name of, and for shipment to, the Virginia associate, and paid for with funds debited from the associate's bank account.

21.     On September 22, 2012, **MALIK** purchased, and caused the purchase of, six (6) AR-15 100 round dual drum magazines from Vendor D, an on-line firearm accessories supplier in Roaring Spring, Pennsylvania.  The items were purchased under the name of, and for shipment to, the Virginia associate, and paid for with funds debited from the associate's bank account.

22.     On September 29, 2012, **MALIK** caused images to be captured on his cellular telephone, at a location at or near the Maryland residence he shared with **AFTAB**, of AR-15 100 round dual drum magazines.

23.     On October 9, 2012, **MALIK** caused Vendor E, a shipping outlet in Bowie, Maryland, to ship a package weighing approximately seventeen (17) pounds to an associate in Lahore, Pakistan (hereafter "the Pakistan associate"), under a fictitious return address and manifested as "lids, plastic holder and empty bags."

24.     On October 12, 2012, **MALIK** purchased twelve (12) AR-15 100 round dual drum magazines from Vendor B and provided a shipping address of a commercial building in Springfield, Virginia, that included a nonexistent suite number for that location.

25.     On October 17, 2012, **MALIK** purchased twenty-two (22) AR-15 100 round

drum magazines from Vendor F, and provided the same partially false shipping address in Virginia referenced in paragraph 24.

26.     On October 22, 2012, **MALIK** caused Vendor E to ship a package weighing approximately twenty-eight (28) pounds to the Pakistan associate in Lahore, Pakistan, under a fictitious return address and manifested as "thread holder."

27.     On October 23, 2012, **MALIK** purchased a gas piston conversation kit designed for AR-15 style rifles from Vendor G, a federally licensed firearms dealer in Richmond, Texas. **MALIK** directed that the kit be shipped to the address of his pizza shop in Maryland, and provided a billing address identical to the partially false business address referenced in paragraphs 24 and 25.

28.     On October 24, 2012, **MALIK** caused images to be captured on his cellular telephone, at a location at or near the Maryland residence he shared with **AFTAB**, of AR-15 100 round dual drum magazines.

29.     On October 31, 2012, a few days after **MALIK** had departed the United States for Pakistan, **AFTAB** caused Vendor E to ship a package weighing approximately fourteen (14) pounds to **MALIK** in Lahore, Pakistan, under a fictitious name and return address and manifested as "metal chain."

30.     On November 6, 2012, **AFTAB** caused Vendor E to ship a package weighing approximately thirty-seven (37) pounds to **MALIK** in Lahore, Pakistan, under a fictitious name and manifested as "empty bags."

31.     On November 13, 2012, **AFTAB** caused Vendor E to ship a package weighing approximately thirty-three (33) pounds to the Pakistan associate in Lahore, Pakistan, under a fictitious name and manifested as "plastic rope holders."

32.     On November 19, 2012, **AFTAB** caused Vendor E to ship a package weighing approximately eighteen (18) pounds to the Pakistan associate in Lahore, Pakistan, under a fictitious name and manifested as "plastic rope holders."

33.     On November 21, 2012, **MALIK** caused an associate in Maryland to send a text message to his cellular telephone that contained the tracking number for the November 19, 2012, shipment referenced in paragraph 32.

34.     On November 26, 2012, **AFTAB** caused Vendor E to ship a package weighing approximately fourteen (14) pounds to the Pakistan associate in Lahore, Pakistan, under a fictitious name and manifested as "plastic cup holders and door springs." Upon being subjected to routine airport security screening on arrival in Dubai, United Arab Emirates, on November 28, 2012, the package was found to contain numerous firearm parts and accessories, including the following export-controlled items: the lower receiver of the Colt M-4 semi-automatic rifle, serial number SP514438, previously purchased by **MALIK** on July 29, 2012; the lower receiver of a Rock River LAR-15 semi-automatic rifle, serial number CM68208; two .223 caliber rifle bolt carriers; two .233 caliber 10 round magazines; an Aimpoint CompM3 optical gun sight; and a TLR-2 LED rail mounted flashlight with laser.

35.     On November 29, 2012, **AFTAB** caused a photograph to be posted on a social networking account in his name depicting an individual, whose face was partially obscured, holding what appeared to be an AR-15 style semi-automatic rifle bearing a fore grip magazine holder and optical gun sight identical to similar items found in the package referenced in paragraph 34.

36.     On November 30, 2012, **MALIK** caused his associate in Maryland to send a text message to his cellular telephone containing the tracking number for the November 26, 2012,

shipment referenced in paragraph 34.

37.     On December 1, 2012, just prior to boarding a flight at JFK International Airport in New York destined for Islamabad, Pakistan, **AFTAB** was found to be in possession of a receipt from Vendor D reflecting the sales amount of the six (6) AR-15 100 round dual drum magazines purchased, and caused to be purchased, by **MALIK** on or about September 22, 2012, as referenced in paragraph 21.   When questioned about the receipt, **AFTAB** falsely advised United States Customs officers that the receipt was for the purchase of a Beretta PX-4 handgun that he allegedly stored with Vendor D.   **AFTAB** also falsely stated that Vendor D had a shooting range of which he was a member.

38.     On or about March 7, 2013, upon disembarking at JFK International Airport from an inbound flight from Pakistan, **MALIK** was found to be in possession of cellular telephone containing various images of AR-15 style semi-automatic rifles and magazines, in some cases in the hands of various individuals, captured at locations near his residence in Pakistan and the Maryland residence he shared with **AFTAB**.


18 U.S.C. § 371
22 U.S.C. § 2778
22 C.F.R. §§ 121.1, 123.1, 127.1, 127.2
50 U.S.C. §1705
15 C.F.R. §§ 736.2, 764.2
15 C.F.R. Part 774, Supp. 1
15 C.F.R. Part 738, Supp. 1

## COUNT TWO

### Unlawful Export of Defense Articles

1.     The allegations set forth in paragraphs 1-3, 7-10, 12-17, and 34-36 of Count One

of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.     On or about November 26, 2012, in the District of Maryland,

**KAMRAN ASHFAQ MALIK**
**and**
**WALEED AFTAB**

did knowingly and willfully export and cause the exportation of firearm parts and accessories

designated as defense articles in Category I of the United States Munitions List, to wit: a .223

caliber rifle lower receiver, serial number SP514438; a .334 caliber rifle lower receiver, serial

number CM68208; two .223 caliber rifle bolt carriers; and two .223 caliber 10 round magazines,

from the United States and destined for Pakistan without having first obtained the required

licenses or authorizations from the Department of State, Directorate of Defense Trade Controls.


22 U.S.C. § 2778
18 U.S.C. § 2
22 C.F.R. §§ 121.1, 123.1, 127.1

## COUNT THREE

### Unlawful Export of Goods

1.      The allegations set forth in paragraphs 4-10, 12-16, and 34-36 of Count One of

this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      On or about November 26, 2012, in the District of Maryland,

**KAMRAN ASHFAQ MALIK**
**and**
**WALEED AFTAB**

did knowingly and willfully export and cause the exportation of certain goods, to wit: an

Aimpoint CompM3 optical gun sight and a TLR-2 LED rail mounted flashlight with laser, from

the United States and destined for Pakistan without having first obtained the required licenses or

authorizations from the Department of Commerce, Bureau of Industry and Security.


50 U.S.C. § 1705
18 U.S.C. § 2
15 C.F.R. §§ 736.2, 764.2
15 C.F.R. Part 774, Supp. 1
15 C.F.R. Part 738 Supp. 1


Rod J. Rosenstein / by cm

Rod J. Rosenstein
United States Attorney


A TRUE BILL:

SIGNATURE REDACTED

Foreperson

2/11/14

Date

11